## WOODRUFF v. PASCHEN.

*Malicious prosecution—Evidence—Oral testimony to prove discharge of plaintiff—Advice of counsel to establish absence of malice—Charge to jury—Limiting malice to institution of criminal prosecution—Request for special findings by jury.*

1. In an action to recover damages for malicious prosecution, arising out of the arrest of plaintiff before a justice of the peace, if the justice's record offered in evidence is so ambiguous and uncertain that it fails to show clearly that the prosecution was finally ended and the defendant discharged, oral testimony is admissible to establish such facts.

2. The defendant in an action for malicious prosecution who has not pleaded the advice of counsel as a defense may nevertheless offer evidence of such fact under a general denial, as tending to show absence of malice.

3. When the issues in an action for malicious prosecution involve a charge of malice covering the entire time a criminal prosecution is pending the trial judge may properly refuse to give an instruction to the jury which limits the inquiry on that subject to the time the criminal prosecution was instituted.

4. As ultimate facts, only, are required to be submitted to a jury for a special finding, it is not error to decline to submit an inquiry in such a case on the subject of malice, limited to the time the criminal prosecution was instituted.

(Decided May 16, 1921.)

ERROR: Court of Appeals for Lucas county.

*Mr. Ben W. Johnson,* for plaintiff in error.
*Mr. Edward H. Ray,* for defendant in error.

RICHARDS, J. Arnold Paschen commenced the original action in the court of common pleas to recover damages for malicious prosecution. The trial resulted in a verdict and judgment in his favor for

$750 and it is insisted that the judgment must be reversed for errors claimed to have been committed by the trial judge and because the verdict and judgment are not sustained by sufficient evidence.

The record discloses that on July 4, 1917, Louis S. Woodruff was driving a Hupmobile car east on Central avenue, at a place known as Rattlesnake Corners, about five miles west of the city of Toledo. The machine contained nine people, five of whom were children and four of whom were adults. Arnold Paschen was at the same time driving a small Overland car, on which he claims to have reduced the gear in order to use it as a towing car. He was driving north on Sylvania road, which intersects Central avenue at right angles at Rattlesnake Corners, and the two cars collided at that intersection. The evidence contained in the bill of exceptions would justify the jury in finding that the Hupmobile car, driven by Woodruff, was traveling at a terrific rate of speed. While the exact rate is in controversy among the witnesses, yet the physical facts, which are not in controversy, show that it was in fact traveling at very high speed. The impact between the two cars was near the rear right wheel of the Hupmobile car, and it is apparent that at the time of the collision this car was being veered somewhat to the left in an attempt to avoid the collision, and that as it so veered the wheels ran into sand along the side of the paved part of the highway. The driver seems, at the instant of the collision, or immediately thereafter, to have turned the car to the right in order to get back on to the pavement again.

All of the witnesses who testified on the subject agree that the car driven by Louis S. Woodruff

turned over three times, finally landing right side up by the roadside, and at right angles thereto, and that none of the passengers was seriously injured. The jury may well have found from the evidence that the car being driven by Paschen was not proceeding at a greater rate of speed than twelve to fifteen miles per hour.

Louis S. Woodruff, who was driving the Hupmobile car, was taken to a hospital, where he remained a day or two, and while there he communicated with his brother, Meyer J. Woodruff, asking him to see his attorney with reference to a prosecution against Paschen. Meyer did see the attorney, and the interview resulted in a prosecution being commenced against Arnold Paschen before a justice of the peace for a violation of the speed law. After the taking of the testimony, and after numerous continuances, and the argument of the case, it was finally disposed of without the conviction of Paschen, and the case at bar is to recover damages for malicious prosecution based upon that action.

It is urged by the plaintiff in error that the present action cannot be maintained because the original criminal prosecution did not result in the acquittal of Paschen. The record of the justice of the peace in that case has been admitted in evidence and shows that the prosecution was commenced on July 5, 1917, by the filing of an affidavit, and that upon different dates evidence was introduced, the last evidence being introduced on September 12, on which date the record shows that the case was taken under advisement until September 13. The justice's record further shows that on September 13 the case was marked off the docket and that by agreement complainant and defendant were to pay the costs, taxed

at $16.05. The existence of any agreement that
Paschen and Woodruff should pay the costs is dis-
puted and the evidence on behalf of Paschen shows
that he was told by the justice of the peace that he
was discharged. No further proceedings have ever
been taken in regard to that case except that one-
half of the costs was in fact paid by Woodruff. This
court is of the opinion that under the state of the
record kept by the justice of the peace oral evidence
was admissible to show that the prosecution had
ended and that Paschen was discharged from cus-
tody. The language of the record is uncertain and
ambiguous, but we think fairly construed it indi-
cates that the prosecution had in fact finally ended
without any conviction of Paschen. The case ap-
pears to be directly within the holding of the court ·
of appeals of Hamilton county as reported in the
case of *James* v. *Hotel Honing Co.*, 6 Ohio App., 162.

Counsel in oral argument and briefs have discussed
the law relating to probable cause, malice and the
advice of counsel as defenses in an action of this
character. The defendant did not affirmatively
plead the advice of counsel as a defense, but the trial
judge, over the objection of Paschen, admitted that
evidence and we think properly so. While it would
doubtless be better practice to plead the advice of
counsel as a defense in an action for malicious prose-
cution, yet, if it is not pleaded, the evidence is still
admissible under a general denial if it tends to show
the absence of malice, for, without malice, express
or implied, there can be no judgment for a plaintiff
in an action for malicious prosecution. Certainly
the record shows no error to the prejudice of Wood-
ruff on this subject, as the evidence offered by him
relating to advice of counsel was freely received by
the court.

We find no ruling by the trial court on either probable cause, malice or advice of counsel which is prejudicial to the plaintiff in error.

Counsel for plaintiff in error insists that the trial court erred in refusing to give to the jury, before argument, requests numbered 1 and 4. The trial court was justified in refusing to give those requests for they limit the jury in considering the question of malice to the time of making the affidavit and instituting the prosecution, while under the pleadings the entire conduct of Meyer Woodruff in furthering the prosecution, whether it was at the time of instituting the same or at any other time during the pendency of the case, was competent for the consideration of the jury. This is well illustrated by the case of *Ash* v. *Marlow,* 20 Ohio, 119, where the warrant was issued on August 4 but the arrest not made until the 30th day of the following October. In the case at bar the affidavit was made on July 5, and the prosecution appears to have been pressed until September 13. To have given those instructions would have been equivalent to saying to the jury that the conduct of Woodruff in pressing the criminal case after the making of the affidavit, whether malicious or otherwise, would be immaterial.

The same criticism applies to each of the three requests for a special finding upon particular questions of fact. One of them is limited to the time of making the affidavit, another to the time before the making of the affidavit, and in the third one the inquiry is as to whether or not the defendant was acting maliciously in the making of the affidavit.

One of the ultimate facts in the case was, of course, whether the defendant had acted maliciously in the prosecution, not simply whether he had acted ma-

liciously in making the affidavit, and it was not, therefore, erroneous for the court to refuse to submit that question to the jury for a special finding. It is certainly true that the trial court should exercise great caution in withdrawing or refusing to submit questions propounded to the jury, as has been stated by the supreme court in *Gale* v. *Priddy*, 66 Ohio St., 400. But it is not prejudicial error to refuse to submit inquiries which will not establish ultimate and determinative facts.

The court has given much time to an investigation of the weight of the evidence involved in this case. One of the defenses on which much reliance is placed is that of advice of counsel. The plaintiff in error, Meyer J. Woodruff, was not in the automobile at the time of the collision, and whatever information he had in relation to the circumstances under which the collision occurred he obtained from his brother Louis and other eye-witnesses. Louis sent him word from the hospital that he should explain the case to his attorney and leave it to him to determine what should be done. Meyer testifies that he went to the attorney and told him that Paschen had run into their car and nearly killed the people in the car. He testifies that he informed the attorney of all the facts that he knew, but that he only knew that Paschen had run into the car and nearly killed the people who were riding therein. When pressed to relate to the jury what information he had given to counsel he stated that he informed him just what has been above set forth, and nothing else. He was asked:

"Q. Do you think you told him anything else?

"A. No, I don't think so. I told the attorney the very words they told me as I said before that Paschen ran into their car and they came very near getting

killed; and Louis wanted me to leave it to Mr. Johnson to do what he sees fit, and that is the way it was; and I don't know of anything else."

He was then asked:

"Q.  That is all you told Mr. Johnson, isn't it?

"A.  Yes."

It is inconceivable that these are all the facts which were within the knowledge of Meyer J. Woodruff when he communicated with counsel and sought legal advice.  It gives no information as to the rate of speed of either car.  As already stated, all of the witnesses who testify on the subject of the collision agree that the Hupmobile was turned over three times and finally landed right side up.  This fact seems so marvelous that it would be difficult to believe if it were not confirmed by all of the witnesses, and it is impossible to believe that none of these witnesses informed Meyer of that fact.  If he knew that fact he should certainly have communicated it to counsel, and had he done so it would have directed attention to the particular circumstances of the collision and to the speed of the Hupmobile car. It must be that the turning over of this car three times was not caused solely by the impact, but was caused by the fact that almost simultaneously with the time the rear wheel was struck, the car had veered into the sand and the driver had then sought while proceeding at high speed to turn to the right in order to remain on the highway.

These facts point unerringly to the high speed at which the Hupmobile car must have been traveling. Meyer would not be entitled to the protection of the advice of counsel unless he communicated these facts to the counsel of whom he sought advice.  If these

facts were fully known they would seem to lead to the conclusion that the prosecution against Paschen was from some motive other than that of securing his conviction for a violation of the speed law.

On the whole record we find no prejudicial error and the judgment will be affirmed.

*Judgment affirmed.*

CHITTENDEN and KINKADE, JJ., concur.